P. Brad Condra, Esq.
Rachel H. Parkin, Esq.
MILODRAGOVICH, DALE
& STEINBRENNER, P.C.
620 High Park Way
P.O. Box 4947
Missoula, Montana 59806-4947
Telephone: (406) 728-1455
Fax No: (406) 549-7077
E-Mail:   bcondra@bigskylawyers.com
           rparkin@bigskylawyers.com
*Attorneys for American Hallmark*
*Insurance Company of Texas*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| AMERICAN HALLMARK INSURANCE COMPANY OF TEXAS, | Cause No. |
| Petitioner, | |
| -vs- | **COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT** |
| WESTERN BUILDING CENTER, INC. a Montana corporation; JEREMIAH HARTLE and KAREN HARTLE, husband and wife, individually and on behalf of their minor children, | |
| Respondents. | |

**COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT - Page 1 of 35**

COMES NOW Petitioner American Hallmark Insurance Company of Texas ("Hallmark"), by and through undersigned counsel of record, and for its Complaint alleges as follows:

## PARTIES

1.    Petitioner American Hallmark is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Texas. As such, Petitioner Hallmark is a citizen of Texas.

2.    Respondent Western Building Center, Inc. ("WBC") is a corporation organized under the laws of Montana with its principal place of business in Montana. As such, Defendant WBC is a citizen of Montana.

3.    Respondents Jeremiah Hartle ("Jeremy") and Karen Hartle, individually and on behalf of their minor children (collectively "Underlying Plaintiffs") are residents of Flathead County, Montana. Underlying Plaintiffs are interested parties to this litigation pursuant to 22 U.S.C. § 2201.

## JURISDICTION AND VENUE

4.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Underlying Litigation is venued in Flathead County, Montana; the insurance policies at issue in this declaratory judgment action were issued in the State of Montana; the Respondents reside in Montana; the damages alleged in the

**COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT - Page 2 of 35**

Underlying Litigation occurred in the Flathead County, Montana; and the contracts and obligations at issue in this case must be interpreted under Montana law.

5.  Subject matter jurisdiction is based on 28 U.S.C. § 1332(a) as this action involves a controversy between citizens of different states and the amount in controversy exceeds $75,000.00.

6.  This Court has subject matter jurisdiction to declare the rights and obligations of the parties herein in regard to the insurance policies at issue in this declaratory judgment action pursuant to 28 U.S.C. § 2201.

7.  The contracts and obligations at issue in this case must be interpreted under Montana law.

## APPLICABLE INSURANCE POLICIES

8.  Hallmark provided WBC with Commercial General Liability coverage under the following policies (hereinafter "Old Policies"):

   a.  Commercial General Liability Policy No. 44-CL-467515-00 with effective dates from 12/31/2010 to 12/31/2011;

   b.  Commercial General Liability Policy No. 44-CL-467515-01 with effective dates from 12/31/2011 to 12/31/2012;

   c.  Commercial General Liability Policy No. 44-CL-467515-02 with effective dates from 12/31/2012 to 12/31/2013; and,

   d.  Commercial General Liability Policy No. 44-CL-467515-03 with effective dates from 12/31/2013 to 12/31/2014.

9.    Hallmark currently provides WBC with Commercial General Liability coverage under the following policies (hereinafter "New Policies"):

      a.    Commercial General Liability Policy No. 44-CL-496053-00 with effective dates from 12-31-2017 to 12/31/2018.

      b.    Commercial General Liability Policy No. 44-CL-496053-01 with effective dates from 12-31-2018 to 12/31/2019.

10.    Hallmark provided, and currently provides, WBC with Commercial Umbrella coverage under the following policies (hereinafter "Umbrella Policies"):

      a. Commercial Umbrella Policy No. 44-CU-467516-00 with effective dates from 12/31/2010 to 12/31/2011;

      b. Commercial Umbrella Policy No. 44-CU-467516-01 with effective dates from 12/31/2011 to 12/31/2012;

      c. Commercial Umbrella Policy No. 44-CU-467516-02 with effective dates from 12/31/2012 to 12/31/2013;

      d. Commercial Umbrella Policy No. 44-CU-467516-03 with effective dates from 12/31/2013 to 12/31/2014;

      e. Commercial Umbrella Policy No. 44-CU-496054-00 with effective dates from 12/31/2017 to 12/31/2018, renewed as part of Commercial General Liability Policy No. 44-CL-496053-01 with effective dates from 12/31/2018 to 12/31/2019.

11.    Coverage under the referenced policies is subject to the terms and conditions of those referenced policies (the Old Policies, the New Policies, and the Umbrella Policies are hereinafter collectively referred to as the "Insuring Agreements").

**COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT - Page 4 of 35**

12.    WBC is a named insured under all of the Insuring Agreements.

13.    Hallmark is currently defending WBC under a reservation of rights in the Underlying Litigation.

## UNDERLYING LITIGATION

14.    On or about May 17, 2018 Jeremiah Hartle and Karen Hartle filed an action in the Montana Eleventh Judicial District, Flathead County, Montana as Cause No. DV-18-532A ("Underlying Litigation").

15.    The Underlying Litigation originally named Blaze King Industries, Inc., CFM U.S. Corporation; Hearthstone Quality Home Heating Products, Inc.; Jotul North America, Inc.; Lanoga Corporation; Robinson Insulation Company; Schrader Stoves of Montana, Inc.; Selkirk Corporation; The Earth Stove, Inc.; Western Building Center, Inc.; VMC Corporation, Ziegler Lumber Company; and Does A-Z as Defendants. *See* Complaint, attached hereto as Exhibit A.

16.    Plaintiffs in the underlying litigation subsequently amended the Complaint, and in doing so have released all named defendants *except* for WBC, and have named one additional Defendant, Conagra Brands, Inc. *See* First Amended Complaint, attached hereto as Exhibit B.

17.    The Underlying Litigation arises solely out of alleged exposure to asbestos.

**COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT - Page 5 of 35**

18.    For their allegations against WBC, Underlying Plaintiffs initially asserted a single strict products liability claim.  Underlying Plaintiffs' First Amended Complaint adds additional claims for Negligence and Loss of Consortium.  All claims arise out of the same alleged conduct, which is in pertinent part as follows:

a.    WBC "engaged in selling various asbestos-containing products in Montana."  Cmpl., Ex. A at ¶ 19; Amended Cmpl., Ex. B at ¶ 7.

b.    WBC was "engaged in the business of distributing, supplying, selling, marketing, and/or advertising asbestos-containing products."  Cmpl., Ex. A at ¶ 49; Amended Cmpl., Ex. B at ¶¶ 16, 22.

c.    WBC "sold and distributed various asbestos-containing products used on the jobs that [Underlying] Plaintiffs' father worked on."  Cmpl., Ex. A at ¶ 50; Amended Cmpl., Ex. B at ¶¶ 17, 23.

d.    Underlying "Plaintiff Jeremy Hartle and his father, Ken Hartle, worked on these products in a manner that resulted in the release of friable asbestos."  Cmpl., Ex. A at ¶ 51; Amended Cmpl., Ex. B at ¶ 18, 24.

e.    "Said asbestos-containing products were defective and unreasonably dangerous for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death to humans.  The defect existed in the said products at the time they left the possession of [WBC].  Said products did, in fact, cause injury and damage to [Underlying] Plaintiffs, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and unreasonably dangerous use."  Cmpl., Ex. A at ¶ 52; Amended Cmpl., Ex. B at ¶¶ 19, 25.

f.     Underlying "Plaintiffs did not know of the substantial danger of using said asbestos-containing products, nor was said danger readily recognizable by them. [WBC] further failed to adequately warn of the risk of contamination to which [Underlying Plaintiff] Jeremy was exposed. As a direct and proximate result of the unlawful actions of [WBC], and as a direct and proximate result of exposure to [WBC's] unreasonably dangerous asbestos-containing products, [Underlying] Plaintiff Jeremey (sic) Hartle suffers from asbestos-related mesothelioma and [Underlying] Plaintiffs have incurred the damages alleged herein." Cmpl., Ex. A at ¶ 53; Amended Cmpl., Ex. B at ¶¶ 20, 26.

19.     Underlying Plaintiffs allege that Underlying Plaintiff Jeremy was first exposed to asbestos beginning in February of 1977 when his family moved to Montana and Underlying Plaintiff Jeremy's father began working with or around asbestos-containing materials. Cmpl., Ex. A at ¶ 23; Amended Cmpl., Ex. B at ¶ 13.

20.     Underlying Plaintiffs allege Jeremy was frequently present when his father was working and he began working with his father when he got older. Cmpl., Ex. A at ¶ 23; Amended Cmpl., Ex. B at ¶ 12.

21.     Underlying Plaintiffs allege Jeremy was "directly exposed to asbestos as a result of his work with a variety of asbestos containing materials" and that Jeremy was "indirectly exposed to asbestos from his father's work with and around asbestos-containing materials which contaminated his father's person and clothing

before unwittingly exposing Jeremy." Cmpl., Ex. A at ¶ 24; Amended Cmpl, Ex. B at ¶ 13.

22. Underlying Plaintiff Jeremy has testified that his exposure period to asbestos-containing materials was between the ages of two and fifteen, or between the years 1978 and 1991. He has disclaimed any exposure to asbestos after 1991. *See* Dep. Jeremy Hartle 93:9-94:22 (Jul. 11, 2018), excerpts only, attached hereto as Ex. C.

23. Underlying Plaintiffs allege that as a result of Jeremy's direct and indirect exposure to asbestos because of WBC's actions, Jeremy "suffers from asbestos-related mesothelioma. . . ." Cmpl., Ex. A at ¶ 53; Amended Cmpl., Ex. B at ¶¶ 20, 26.

24. Underlying Plaintiff Jeremy first showed signs of asbestos-related mesothelioma in October of 2017, when four liters of fluid were removed from his abdomen during hernia surgery. Following a litany of medical testing in December of 2017 and January of 2018, he was diagnosed with peritoneal mesothelioma in January of 2018. Dep. Jeremy Hartle, Ex. C at 20:3-24.

25. The allegations as they relate to WBC involve "bodily injury" in the form of asbestos-related mesothelioma which occurred solely from Underlying Plaintiff Jeremy's exposure to asbestos and asbestos-containing products.

COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT - Page 8 of 35

## COUNT I
## DECLARATORY JUDGMENT RE:
## COMMERCIAL GENERAL LIABILITY POLICES

26.    Petitioner re-alleges Paragraphs 1 through 25 above.

27.    The parties to this lawsuit dispute whether coverage exists under

Hallmark CGL Policy No. 44-CL-467515-00 through 44-CL-467515-03 (the Old

Policies), and/or Hallmark CGL Policy No. 44-CL-496053-00 through 44-CL-

496053-01 (the New Policies) for the claims asserted against WBC by Underlying

Plaintiffs in the Underlying Litigation.

28.    This action seeks a declaration as to Hallmark's obligation to defend

and/or indemnify WBC for the claims asserted against it in the Underlying

Litigation.

29.    An actual controversy exists between Hallmark and WBC in that

Hallmark believes the claims Underlying Plaintiffs asserted against WBC in the

Underlying Litigation are excluded by the Pollution Exclusion in the Old Policies,

and by the Asbestos Exclusion in the New Policies and the Old Policies.

30.    Hallmark's Commercial General Liability Policies at issue in this

matter contain the following pertinent provisions:

### Old Policies

Policies and Effective Dates:    44-CL-467515-00 - 12-31-2010 to 12/31/2011
44-CL-467515-01 - 12-31-2011 to 12/31/2012

44-CL-467515-02 - 12-31-2012 to 12/31/2013
44-CL-467515-03 - 12-31-2013 to 12/31/2014

**New Policies**

Policy and Effective Dates:     44-CL-496053-00 - 12-31-2017 to 12/31/2018
44-CL-496053-01 - 12-31-2018 to 12/31/2019

## COMMERCIAL GENERAL LIABILITY POLICY

### SECTION I - COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result But:

        (1)  The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

        (2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for

under Supplementary Payments - Coverages **A** and **B**.

**b.**      This insurance applies to "bodily injury" and "property damage" only if:

     **(1)**      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

     **(2)**      The "bodily injury" or "property damage" occurs during the policy period; and

     **(3)**      Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**      "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**      "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

> **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
>
> **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
>
> **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.
>
> **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2.    Exclusions**

This insurance does not apply to:

\*    \*    \*

> **f.    Pollution**
>
> **(1)** "'Bodily injury'" or "'property damage'" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
>
> > **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:
> >
> > > **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that

is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any in-sured, other than that additional in-sured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time trans-ported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants"

are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)**    "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)**    "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)**    "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)**    At or from any premises, site or location on which

any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2)   Any loss, cost or expense arising out of any:

    **(a)**   Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize , or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)**   Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

\*   \*   \*

**o.**   **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

\*   \*   \*

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

   This insurance does not apply to:

   a. **Knowing Violation Of Rights Of Another**

**COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT - Page 16 of 35**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b.      Material Published With Knowledge Of Falsity**

"Personal or advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c.      Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

\*      \*      \*

**g.      Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

\*      \*      \*

**m.      Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

\*      \*      \*

## COVERAGE C MEDICAL PAYMENTS

**1.**      Insuring Agreement

   **a.**     We will pay medical expenses as described below for "bodily injury" caused by an accident:

       **(1)**    On premises you own or rent;

       **(2)**    On ways next to premises you own or rent; or

       **(3)**    Because of your operations;

       provided that:

          **(a)**    The accident takes place in the "coverage territory" and during the policy period;

          **(b)**    The expenses are incurred and reported to us within one year of the date of the accident; and

          **(c)**    The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   **b.**     We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

       **(1)**    First aid administered at the time of an accident;

       **(2)**    Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

       **(3)**    Necessary ambulance, hospital, professional nursing and funeral services.

**2.**    **Exclusions**

We will not pay expenses for "bodily injury":

\*   \*   \*

**b.    Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

\*    \*    \*

**d.    Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

\*    \*    \*

**g.    Coverage A Exclusions**

Excluded under Coverage **A**.

\*    \*    \*

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*    \*    \*

**SECTION V - DEFINITIONS**

1.    "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **a.**    Notices that are published include material placed on the Internet or on similar electronic means of communication; and

     **b.**    Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

*   *   *

**3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.**    "Coverage territory" means:

     **a.**    The United States of America (including its territories and possessions), Puerto Rico and Canada;

*   *   *

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

     **a.**    False arrest, detention or imprisonment;

     **b.**    Malicious prosecution;

     **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

     **d.**    Oral or written publication, in any manner, of material that slanders or libels a person or or-ganization or disparages a person's or organization's goods, products or services;

     **e.**    Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.**    The use of another's advertising idea in your "advertisement"; or

    **g.**    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.**    "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

*  *  *

**18.**    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal or advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.**    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.**    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

*  *  *

<strong>EXCLUSION – ASBESTOS</strong>

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos

fibers or products containing asbestos, provided that the injury or damage is caused or contributed to by the hazardous properties of asbestos.

This includes:

**a.**     Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

**b.**     Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

                                        \*   \*   \*

### TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.     Pollution**

**(1)**     "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)**     Any loss, cost or expense arising out of any:

**(a)**     Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove,

contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)**    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

\*    \*    \*

31.    Coverage for the claims in the Underlying Litigation is excluded based on one or all of the, provisions, exclusions and/or endorsements stated above.

32.    Coverage under the Insuring Agreements for "Coverage B" is not triggered because Underlying Plaintiffs do not assert a claim for "personal and advertising injury".

33.    Coverage under the Insuring Agreements for "Coverage A" regarding "property damage" is not triggered because the allegations in the Underlying Litigation only involve allegations of "bodily injury".

34.    The Pollution Exclusion in the Old Policies unequivocally excludes coverage for "bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

35.    The Underlying Plaintiffs allege their injuries resulted because of the Jeremy's exposure to asbestos, which is a pollutant under the Old Policies.

36.    Underlying Plaintiffs' alleged injuries would not have occurred but for the actual, alleged or threatened discharge, dispersal, release or escape of asbestos.

37.    The Pollution Exclusion precludes coverage for the allegations Underlying Plaintiffs have asserted against WBC in the Underlying Litigation with regard to the Old Policies.

38.    The Exclusion-Asbestos ("Asbestos Exclusion") unequivocally excludes coverage for "bodily injury," "property damage" or "personal and advertising injury" arising out of the "actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the injury or damage is caused or contributed to by the hazardous properties of asbestos."

39.    Underlying Plaintiffs allege their injuries resulted because of the Jeremy's exposure to asbestos, asbestos fibers or products containing asbestos

40.    Underlying Plaintiffs' alleged injuries arose out of the "actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos."

**COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT - Page 24 of 35**

41.    Underlying Plaintiffs' alleged injuries were "caused or contributed to by the hazardous properties of asbestos."

42.    The Asbestos Exclusion precludes coverage for the allegations Underlying Plaintiffs have asserted against WBC in the Underlying Litigation with regard to the Old Policies and the New Policies.

43.    The other provisions, exclusions, and endorsements cited above in Paragraph 30 may also preclude or limit coverage under the Insuring Agreements.

44.    By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liabilities, if any, which exist as to the Hallmark CGL Policy No. 44-CL-467515-00 through 44-CL-467515-03 (the Old Policies) and/or Hallmark CGL Policy No. 44-CL-496053-00 through 44-CL-496053-01 (the New Policies) for the claims asserted against WBC by Underlying Plaintiffs in the Underlying Litigation.

## COUNT II
## DECLARATORY JUDGMENT RE:
## COMMERCIAL UMBRELLA POLICIES

45.    Petitioner re-alleges Paragraphs 1 through 44 above.

46.    The parties to this lawsuit dispute whether coverage exists under Hallmark Commercial Umbrella Policy Nos. 44-CU-467516-00 through 44-CU-467516-03 and No. 44-CU-496054-00 with effective dates from 12/31/2017 to

12/31/2018, renewed as part of Commercial General Liability Policy No. 44-CL-496053-01 with effective dates from 12/31/2018 to 12/31/2019, for the claims asserted against WBC by Underlying Plaintiffs in the Underlying Litigation.

47.    This action seeks a declaration as to Hallmark's obligation to defend and/or indemnify WBC for the claims asserted against it in the Underlying Litigation.

48.    An actual controversy exists between Hallmark and WBC in that Hallmark believes the claims Underlying Plaintiffs asserted against WBC in the Underlying Litigation are excluded by the Insuring Agreement, the Pollution Exclusion, and the Asbestos Exclusion contained in the Umbrella Policies.

49.    Hallmark's Insuring Agreements contain the following pertinent provisions:

**<u>Umbrella Policies</u>**

Policies and Effective Dates:  44-CU-467516-00 - 12/31/2010 to 12/31/2011,
44-CU-467516-01 - 12/31/2011 to 12/31/2012,
44-CU-467516-02 - 12/31/2012 to 12/31/2013,
44-CU-467516-03 - 12/31/2013 to 12/31/2014, and
44-CU-496054-00 - 12/31/2017 to 12/31/2018,
renewed as 44-CL-496053-01 with effective dates from
12/31/2019 to 12/31/2019

## SECTION I – COVERAGES

## Coverage A – Excess Liability Coverage

**1. Insuring Agreement**

a. We will pay those sums, in excess of the amount payable under the terms of any "underlying insurance," that the insured becomes legally obligated to pay as damages because of "injury" or damage to which this insurance applies, provided that the "underlying insurance" also applies, or would apply but for the exhaustion of its applicable limits of insurance…

\*   \*   \*

d. This coverage is written with the understanding that all "underlying insurance" is written on an "occurrence" basis.

e. This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance," except:

    1)    We will have no obligation under this insurance with respect to any claims or "suit" that is settled without our consent; and

    2)    With respect to any provisions to the contrary contained in this insurance.

\*   \*   \*

**2. Exclusions – Coverage A**

The exclusions applicable to the "underlying insurance" also apply to this insurance. . .

\*   \*   \*

**Coverage B - Extended Liability Coverage**

    **1.**    **Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies. This insurance applies only to "injury" which occurs during the policy period. The "injury" must be caused by an "occurrence." This insurance applies only to "injury" which occurs in the "coverage territory."

\*    \*    \*

2.    **Exclusions - Coverage B**

This insurance does not apply to:

a.    "Injury" that is the subject of the insurance policies shown in the Schedule of Underlying Insurance in the Declarations.

\*    \*    \*

## SECTION V - CONDITIONS

\*    \*    \*

7.    **Policy Period**

This insurance will respond to "injury" or damage that occurs, or arises from an offense committed, during the policy period of this insurance shown in the Declarations.

\*    \*    \*

## SECTION VI – DEFINITIONS

3.    "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*    \*    \*

6.    "Incident" means:

a. With respect to "bodily injury" to persons other than your employees and "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

b. With respect to "bodily injury" to your employees arising out of and in the course of their employment by you, the accident or disease which causes the "bodily injury"; and

c. With respect to offenses committed by the insured resulting in "personal injury" or "advertising injury" other than "bodily injury," all such "injury" sustained by anyone person or organization.

\*    \*    \*

8.    "Injury" means "bodily injury," "property damage," "advertising injury" or "personal injury."

9.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*    \*    \*

15.    "Underlying insurance" means the liability insurance coverage provided under policies shown in the Declarations, for the limits and periods indicated. It includes any policies issued to replace those policies during the term of this insurance that provide:

a.    At least the same policy limits;

b.    The same hazards insured against, except as modified by general program revisions or as agreed to by us in writing.

16.    "Underlying insurer" means any insurer who issues a policy of "underlying insurance."

17.    "Underlying policy" means a policy providing "underlying insurance."

\*    \*    \*

## EXCLUSION OF UNDERLYING POLICIES APPLICABLE

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The following is added to paragraph 2. Exclusions of COVERAGE B - EXTENDED LIABILITY COVERAGE (Section I):

r.    This insurance does not apply to any "injury" excluded under the insurance shown in the Schedule of Underlying Insurance.

\*    \*    \*

## POLLUTION EXCLUSION

This insurance does not apply to:

1)    "Injury" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

    a)    At or from premises you own, rent or occupy;

    b)    At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;

    c)    Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you

or any person or organization for whom you may be legally responsible; or

d)    At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

(i)    if the pollutants are brought on or to the site or location in connection with such operations; or

(ii)    if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

2)    Any loss, cost, or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Subparagraphs (a) and (d) (i) of paragraph (1) of this exclusion do not apply to "bodily injury" or "property damage" caused by heat, smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

*    *    *

ASBESTOS EXCLUSION

This policy does not apply to any "injury" arising out of or resulting from asbestos.

The Company shall not have any duty to defend any suit against you seeking damages on account of any such injury.

All other terms and conditions remain unchanged.

COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT - Page 31 of 35

51.    Coverage for the claims in the Underlying Litigation are excluded from coverage based on one or all of the provisions, exclusions and/or endorsements stated above.

52.    Coverage under the Insuring Agreements for "Coverage A" is not triggered because there is no "Underlying Insurance" which applies to the Underlying Plaintiffs' claims, a prerequisite to triggering coverage under the Excess Liability Coverage of the Umbrella Policies.

53.    Coverage under the Insuring Agreements for "Coverage B" regarding "injury" is not triggered because the claims in the Underlying Litigation do not allege any "injury" caused by an "occurrence" which occurred or arose from an offense committed during the policy period.

54.    The policy periods of the Umbrella Policies include 12/31/2010 to 12/31/2011; 12/31/2011 to 12/31/2012; 12/31/2012 to 12/31/2013; 12/31/2013 to 12/31/2014; 12/31/2017 to 12/31/2018; and 12/31/2018 to 12/31/2019.

55.    Underlying Plaintiff Jeremy admits that his exposure to asbestos ceased in 1991, nearly 20 years prior to the first policy period, and that his injuries manifested in October of 2017, while there was no Policy in place.  Therefore his injury did not occur or arise from an offense committed during the policy period.

56.    The Pollution Exclusion in the Umbrella Policies unequivocally excludes coverage for any "injury" arising from actual, alleged or threatened discharge, dispersal, release, or escape of pollutants.

57.    The Underlying Plaintiffs allege their injuries resulted because of the Jeremy's exposure to asbestos, which is a pollutant under the Umbrella Policies.

58.    The Pollution Exclusion precludes coverage for the allegations Underlying Plaintiffs have asserted against WBC in the Underlying Litigation with regard to the Umbrella Policies.

59.    The Asbestos Exclusion unequivocally excludes coverage for any "injury" arising out of or resulting from asbestos.

60.    Underlying Plaintiffs allege their injuries resulted because of Jeremy's exposure to asbestos, asbestos fibers or products containing asbestos.

61.    Underlying Plaintiffs' alleged injuries therefore arose out of or resulted from asbestos and the Asbestos Exclusion precludes coverage for the allegations Underlying Plaintiffs have asserted against WBC in the Underlying Litigation with regard to the Umbrella Policies.

62.    The other provisions, exclusions, and endorsements cited above in Paragraph 50 may also preclude or limit coverage under the Insuring Agreements.

63.    By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liabilities, if any, which exist as to the Hallmark Commercial Umbrella Policy Nos. 44-CU-467516-00 through 44-CU-467516-03 and 44-CU-496054-00, renewed as part of Commercial General Liability Policy No. 44-CL-496053-01 with effective dates from 12/31/2019 to 12/31/2019, (the Umbrella Policies) for the claims asserted against WBC by Underlying Plaintiffs in the Underlying Litigation.

## COUNT III
## ATTORNEYS' FEES

64.    Petitioner re-alleges Paragraphs 1 through 63 above.

65.    Where no defense obligation is owed, an insurer may recoup costs to defend an insured made under a reservation of rights if the insurer provides timely notice of its right to recoup costs of defense.

66.    Under the terms and conditions of the Insuring Agreements, no coverage is available for the claims made and damages sought in the Underlying Litigation.

67.    Under the facts of this case, Petitioner is entitled to an order granting its attorneys' fees and supplemental relief.

**WHEREFORE**, Petitioner Hallmark prays that this Court ascertain and determine:

**COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT - Page 34 of 35**

1.     That Hallmark owes no duty to defend and/or indemnify WBC in the Underlying Litigation;

2.     That none of the above-named Respondents have an interest in either the Old Policies, the New Policies, or the Umbrella Policies;

3.     For reimbursement of any indemnity payments made on WBC's behalf for any claims this Court deems outside the insuring agreement or barred by the exclusions and endorsements contained in the Old Policies, the New Policy, and the Umbrella Policies;

4.     For reimbursement of defense costs expended on WBC's behalf for any claims this Court deems outside the insuring agreement or barred by the exclusions and endorsements contained in the Old Policies, the New Policies, and the Umbrella Policies, pursuant to *Travelers Cas. and Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469 (Mont. 2005); and

5.     For such other and further relief as the Court deems just and proper.

DATED this 19th day of March, 2019.

By:___ /s/ P. Brad Condra
P. Brad Condra

MILODRAGOVICH, DALE
& STEINBRENNER, P.C.
*Attorneys for Petitioner*