# EXHIBIT B

Roger Sullivan
Allan M. McGarvey
Ethan Welder
McGarvey, Heberling, Sullivan & Lacey, P.C.
345 First Avenue East
Kalispell, MT 59901
(406) 752-5566

Matthew P. Bergman
Colin Mieling
Bergman Draper Oslund
821 Second Avenue
Seattle, WA 98104
(206) 200-2606

*Attorneys for Plaintiffs*

## MONTANA ELEVENTH JUDICIAL DISTRICT, FLATHEAD COUNTY

| | |
|---|---|
| JEREMIAH HARTLE and KAREN HARTLE, husband and wife, individually and on behalf of their minor children,<br><br>Plaintiffs,<br>v.<br><br>CONAGRA BRANDS, INC., a Delaware for profit corporation; WESTERN BUILDING CENTER, INC., a Montana for profit corporation; and DOES A-Z,<br><br>Defendants. | **CAUSE NO. DV-18-532(B)** |
| WESTERN BUILDING CENTER, INC., a Montana corporation,<br><br>Third Party Plaintiff,<br>v.<br><br>PALMER G. LEWIS COMPANY, a Montana corporation; ACE HARDWARE CORPORATION, a Delaware corporation; GROGAN ROBINSON LUMBER COMPANY, a Montana corporation; and HUTTIG BUILDING PRODUCTS, INC., a Washington corporation,<br><br>Third Party Defendants. | **PLAINTIFFS' FIRST AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY** |

PLAINTIFFS' FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL-Page 1 of 8

## PARTIES

1. Plaintiffs Jeremiah ("Jeremy") and Karen Hartle, are residents of Flathead County, Montana. They are the parents of four minor children who are dependent upon their parents for support and care.

2. Defendant CONAGRA BRANDS, INC. is a corporation organized and existing under the laws of Delaware with its principal place of business in the State of Nebraska.

3. Defendant CONAGRA BRANDS, INC. is a successor corporation which is liable for the actions of the Peavey Company with respect to the claims and allegations of this Complaint relating to the Peavey Thunderbird Home Center of Kalispell.

4. Defendant WESTERN BUILDING CENTER, INC. is a corporation organized under the laws of Montana with a principal place of business in Montana.

5. Defendants CONAGRA BRANDS, INC., and WESTERN BUILDING CENTER, INC., are referred to herein as "Supplier Defendants."

6. By Order of October 24, 2018, the Court granted WESTERN BUILDING CENTER, INC.'s Motion for Leave to File Third Party Complaint against Third Party Defendants, PALMER G. LEWIS COMPANY, ACE HARDWARE CORPORATION, GROGAN ROBINSON LUMBER COMPANY, and HUTTIG BUILDING PRODUCTS, INC.

7. At all times relevant to this action, "Supplier Defendants," their predecessors in interests and/or their subsidiaries and associates, engaged in selling various asbestos-containing products in Montana.

8. Does A - Z are corporations or persons, whose identities are unknown at this time, and whose negligence and wrongful acts caused Plaintiffs' asbestos related mesothelioma.

9. Plaintiffs will seek to amend their complaint when the true names and capacities of Does A - Z are ascertained.

PLAINTIFFS' FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL-Page 2 of 8

10. Venue in this action is proper in Flathead County, Montana, because at least one of the Defendants engaged in tortious conduct within Flathead County and is a resident of Flathead County.

## GENERAL ALLEGATIONS

11. In 1963 W.R. Grace & Co. (Grace) purchased an existing vermiculite mine and mill in Libby, Montana (the Mine) from the Zonolite Company (Zonolite), in the process assuming all liabilities of Zonolite. Grace operated the Mine from 1963 until 1990. The vermiculite was intermixed with a highly toxic form of asbestos. The vermiculite was distributed throughout the nation and incorporated into a variety of commercial products including Z-Brick. The vermiculite was also sold under brand name Zonolite.

12. Jeremy Hartle is the son of Ken Hartle, who has worked as a mason throughout Montana since the late 1970s. As a mason, Ken Hartle performed a number of tasks where he worked directly with or around asbestos-containing materials. This included his work manufacturing panels for stoves, installing and repairing wood stoves, installing and repairing chimneys, and performing other masonry work. A substantial portion of Ken Hartle's work manufacturing panels and formwork for stoves took place at the homes where his family lived. Jeremy was frequently present while this kind of work was being performed from an early age. As he got older, Jeremy began to work directly with his father on various masonry jobs.

13. Jeremy Hartle was directly exposed to asbestos as a result of his work with a variety of asbestos containing materials. He was also indirectly exposed to asbestos from his father's work with and around asbestos-containing materials which contaminated his person and clothing before unwittingly exposing Jeremy. Dates of Jeremy's residence in the Kalispell area and exposure are 1977 on. Jeremy was also indirectly exposed while his father worked as a mason in Whitefish in the late 1970s.

PLAINTIFFS' FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL-Page 3 of 8

14. At all times Jeremy and his father were ignorant of the nature and extent of the life-threatening risks and injury involved, and would not have continued to be exposed to the materials they were working with if they had known the true facts.

## FIRST CLAIM
### Strict Products Liability v. Supplier Defendants

15. All paragraphs above are incorporated by this reference.

16. At times relevant to this action, the Supplier Defendants were engaged in the business of distributing, supplying, selling, marketing, and/or advertising asbestos-containing products.

17. The Supplier Defendants sold and distributed various asbestos-containing products used on the jobs that Plaintiffs' father worked on.

18. Plaintiff Jeremy Hartle and his father, Ken Hartle, worked with these products in a manner that resulted in the release of friable asbestos.

19. Said asbestos-containing products were defective and unreasonably dangerous for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death to humans. The defect existed in the said products at the time they left the possession of the Supplier Defendants. Said products did, in fact, cause injury and damage to Plaintiffs, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and unreasonably dangerous for use.

20. Plaintiffs did not know of the substantial danger of using said asbestos-containing products, nor was said danger readily recognizable by them. The Supplier Defendants further failed to adequately warn of the risk of contamination to which Jeremy was exposed.

As a direct and proximate result of the unlawful actions of the Supplier Defendants, and as a direct and proximate result of exposure to the Supplier Defendants' unreasonably dangerous

asbestos-containing products, Plaintiff Jeremey Hartle suffers from asbestos-related mesothelioma and Plaintiffs have incurred the damages alleged herein.

## SECOND CLAIM
### Negligence v. Supplier Defendants

21. All paragraphs above are incorporated by this reference.

22. At times relevant to this action, the Supplier Defendants were engaged in the business of distributing, supplying, selling, marketing, and/or advertising asbestos-containing products.

23. The Supplier Defendants sold and distributed various asbestos-containing products used on the jobs that Plaintiffs' father worked on.

24. Plaintiff Jeremy Hartle and his father, Ken Hartle, worked with these products in a manner that resulted in the release of friable asbestos.

25. Said asbestos-containing products were defective and unreasonably dangerous for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death to humans. The defect existed in the said products at the time they left the possession of the Supplier Defendants. Said products did, in fact, cause injury and damage to Plaintiffs, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and unreasonably dangerous for use.

26. Plaintiffs did not know of the substantial danger of using said asbestos-containing products, nor was said danger readily recognizable by them. The Supplier Defendants negligently failed to protect Jeremy from the asbestos hazards associated with their products and negligently failed to adequately warn of the risk of contamination to which Jeremy was exposed. As a direct and proximate result of the negligent actions of the Supplier Defendants, and as a direct and proximate result of exposure to the Supplier Defendants' asbestos-containing

products, Plaintiff Jeremey Hartle suffers from asbestos-related mesothelioma and Plaintiffs have incurred the damages alleged herein.

## THIRD CLAIM
### Does A-Z

27. All paragraphs above are incorporated by this reference.

28. Does A-Z are corporations or persons unknown at this time whose negligence and wrongful acts caused asbestos disease in the Plaintiff. Plaintiffs will seek to amend their complaint when the true names and capacities of Does A-Z are ascertained.

## FOURTH CLAIM
### Loss of Consortium

29. All paragraphs above are incorporated by this reference.

30. Plaintiffs Karen Hartle and the minor children of Jeremiah and Karen Hartle have suffered loss of consortium, including loss of the society, comfort, care, and companionship of their husband and father Jeremiah, and are entitled to all damages caused thereby.

## DAMAGES

31. All paragraphs above are incorporated by this reference.

32. As a direct and proximate result of the acts of the Defendants, the Plaintiffs have suffered and will suffer:

   a. Loss of enjoyment of established course of life;

   b. Loss of services which can no longer be performed;

   c. Loss of earnings and earning capacity;

   d. Physical, mental and emotional pain and suffering;

   e. Medical expenses, rehabilitation expenses and related expenses;

   f. Loss of insurability for medical coverage;

g.  Great grief and sorrow; and

h.  Loss of consortium.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for damages against the Defendants as follows:

1. Reasonable damages for lost enjoyment of established course of life, past and future;

2. Reasonable damages for loss of earnings and earning capacity;

3. Reasonable damages for loss of services which can no longer be performed;

4. Reasonable damages for physical, mental and emotional pain and suffering, past and future;

5. Reasonable damages for medical expenses, rehabilitation expenses, and related expenses incurred to date and reasonably certain to be incurred in the future;

6. Advance payment of past and present medical expenses and special damages not reasonably in dispute;

7. Reasonable damages for grief and sorrow;

8. Reasonable damages for loss of consortium;

9. Punitive damages as provided under Montana Law;

10. For costs of suit; and

11. For such further relief as is just and equitable under the circumstances.

PLAINTIFFS' FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL-Page 7 of 8

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

DATED this 21st day of November, 2018.

                    McGARVEY, HEBERLING, SULLIVAN
                            & LACEY, P.C.

By: _____
ROGER SULLIVAN
ALLAN McGARVEY
ETHAN WELDER

BERGMAN DRAPER OLSUND
MATTHEW P. BERGMAN
COLIN MIELING

*Attorneys for Plaintiffs*